IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOSE GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-1025-JPG-DGW |
| | ) | |
| WEXFORD HEALTH SOURCES, INC. and | ) | |
| DR. MICHAEL ADAMS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by Defendants Dr. Michael Adams and Wexford Health Sources, Inc. (Doc. 52). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment be **GRANTED**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff Jose Gonzalez, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Robinson Correctional Center ("Robinson CC"). Plaintiff contends medical staff at Robinson CC failed to properly diagnose and treat his pneumonia in April, 2015, causing him to undergo surgery and suffer from prolonged and unnecessary pain.

Plaintiff proceeds in this action on an Eighth Amendment deliberate indifference claim against Dr. Michael Adams and Wexford Health Sources, Inc. ("Wexford").

Defendants filed a motion for summary judgment on August 1, 2017 (Doc. 52) that is now before the Court. Plaintiff, through counsel, filed his response on August 31, 2017 (Doc. 56). Defendants filed a reply thereto (Doc. 57) that will be considered by the Court in light of the particular circumstances presented.

### FINDINGS OF FACT

Plaintiff presented at the Health Care Unit ("HCU") at Robinson CC on April 9, 2015 with complaints of a dry cough and nasal congestion (Affidavit of Michael Adams, M.D., Doc. 53-6, ¶ 5; *see* Plaintiff's Robinson CC Medical Records, Doc. 53-1, pp. 26-27). Plaintiff indicated his symptoms had been present for three days (*Id.*). Plaintiff was evaluated by Nurse Iknayan who took his vital signs and completed a throat and nasal exam (*Id.*). Plaintiff's temperature was 100.4º, his pulse oxygenation was 96% (a reading of 93% or higher is considered normal), his lung sounds were clear, as was his sputum, and his nasal and throat exams were normal (*Id.*). Nurse Iknayan provided Plaintiff over-the-counter Ibuprofen and an antihistamine (*Id.*; *see* Deposition of Sheila Iknayan, RN, Doc. 56-1, p. 10). Plaintiff was instructed to get plenty of rest, increase his fluid intake, and return to sick call if his symptoms worsened or persisted (Doc. 53-6, ¶ 5; *see* Doc. 53-1, p. 27).

Plaintiff's condition persisted and he again presented to the HCU on April 13, 2015 (Doc. 53-6, ¶ 6; *see* Doc. 53-1, pp. 28-29). On this date, Plaintiff was examined by Nurse Stephens for complaints of shivers and coughing (*Id.*). Nurse Stephens took Plaintiff's vital signs and completed a throat and nasal exam (*Id.*). Plaintiff's temperature was 96.7º, his pulse oxygenation

was 98%, his lung sounds were clear and his throat and nasal exams were normal (*Id.*). No sputum color was noted as Plaintiff self-reported that he had never looked at it (*Id.*). Nurse Stephens dispensed Acetaminophen and Guafenesin (an expectorant medication) and also advised Plaintiff to get plenty of rest and increase his fluid intake (*Id.*). Nurse Stephens did not review Plaintiff's medical records from April 9, 2015 during her assessment of Plaintiff nor did she ask Plaintiff to provide a sputum sample (Deposition of Kimberly Stephens, RN, Doc. 56-2, p. 5-6; *see* Doc. 53-1, p. 28).

Plaintiff was next seen for complaints of pain in his right lung on April 20, 2015 (Doc. 53-6, ¶ 7; *see* Doc. 53-1, p. 32). Plaintiff advised Nurse Wait at this examination that he was not sleeping due to his coughing and he was afraid he would die in prison (*Id.*). Nurse Wait referred Plaintiff to a doctor (*Id.*).

Plaintiff first saw a physician, Defendant Dr. Adams, for complaints of right flank pain and coughing on April 21, 2015 (Doc. 53-6, ¶ 8; *see* Doc. 53-1, p. 33). Plaintiff described his condition as a throbbing, sharp, grabbing pain with a productive cough and associated "nasty" sputum (*Id.*). Plaintiff's temperature was 99.6º, his blood pressure was 130/75, his heart rate was 87, and his respirations were 18 (*Id.*). On percussion, Plaintiff's right lung base was dull (meaning he had an area that was duller in percussive note than the rest of his lung fields) and, on auscultation (listening through a stethoscope), Plaintiff's breath sounds were normal (*Id.*). Defendant Adams diagnosed Plaintiff with bronchitis and prescribed Levaquin, an antibiotic, to be taken daily for seven days (*Id.*). Defendant Adams prescribed Levaquin as it is a broad spectrum antibiotic that is FDA approved to treat both bronchitis and uncomplicated pneumonia (Doc. 53-6, ¶ 9). Defendant Adams did not order an x-ray or take a sputum culture (Deposition of Michael

Adams, M.D., Doc. 53-5, p. 17; *see* Doc. 53-1, p. 33).

Subsequently, just before midnight on April 23, 2015, a Code 3 (medical emergency) was called due to Plaintiff's worsening condition (Doc. 53-6, ¶ 10; *see* Doc. 53-1, p. 35 and Doc. 56-3, p. 5). Nurse Rice responded to the Code 3 wherein Plaintiff complained that his lungs hurt (*Id.*). Plaintiff was brought to the HCU where a standard upper respiratory infection protocol was performed (Doc. 53-6, ¶ 10; *see* Doc. 53-1, pp. 36-37). Plaintiff indicated he had chills, a cough that produced brown and green sputum, and pain in his right lung (*Id.*). Plaintiff had a fever of 103º (*Id.*). Plaintiff also had an elevated pulse (134) and slightly elevated blood pressure (155/83) (Deposition of Derek Rice, RN, Doc. 56-3, p. 6). Nurse Rice noted Plaintiff had weak respiration and that he refused to take a deep breath (*Id.*). Nurse Rice dispensed Coldonyl tablets and contacted Defendant Dr. Adams by phone (*Id.*). Defendant Adams ordered that Plaintiff be seen by Dr. Shah the following day, April 25, 2015 (*Id.*). Defendant Adams also extended Plaintiff's Levaquin prescription from seven days to ten days and ordered that Plaintiff stay in the HCU for observation for twenty-three hours (*Id.*). Plaintiff was regularly monitored throughout the early morning hours of April 24, 2015 (*see* Doc. 53-6, ¶¶ 10-12; *see also* Doc. 53-1, pp. 38-40). On the evening of April 24, 2015, Plaintiff was observed sitting on the bedside conversing with his peers (Doc. 53-6, ¶ 12; *see* Doc. 53-1, p. 40). Plaintiff's heart rate was 88, his pulse oxygenation was 97%, and his temperature was 99.6º (*Id.*). Nurse Rice noted that Plaintiff was okay to be released to his housing unit, although less than twenty-three hours had passed (Doc. 53-6, ¶ 12; Deposition of Derek Rice, RN, Doc. 56-3, p. 9; *see* Doc. 53-1, p. 41).

Plaintiff was next seen by Dr. Vipin Shah on April 25, 2015 around 11:00 a.m. (Doc. 53-6, ¶ 13; *see* Doc. 53-1, p. 41). Plaintiff indicated that he was coughing up green sputum and had pain

in his lungs (Deposition of Vipin Shah, M.D., Doc. 56-4, p. 6; Doc. 53-6, ¶ 13; *see* Doc. 53-1, p. 41). Plaintiff's pulse oxygenation level was at 93% and he had a fever of 103.1° (Doc. 53-6, ¶ 13; *see* Doc. 53-1, p. 41). Based on his examination findings, Dr. Shah diagnosed Plaintiff with probable pneumonia and referred him to the emergency room (*Id.*).

Approximately one hour later, Plaintiff presented at Crawford Memorial Hospital's Emergency Room where he was given various diagnostic tests, including a blood culture and complete blood count with differential (Doc. 53-6, ¶ 14; *see* Doc. 53-4, pp. 5, 14). A chest x-ray and CT scan were also performed (Doc. 53-6, ¶ 14; *see* Doc. Doc. 53-4, p. 28). Plaintiff was diagnosed with right lower and right middle lobe pneumonia and empyema (an accumulation of puss in the pleural cavity that can develop when bacteria invades the pleural space) (Doc. 53-6, ¶ 16; *see* Doc. 53-4, p. 16). On the evening of April 25, 2015, Plaintiff was transferred from Crawford Memorial Hospital to Carle Hospital, a higher acuity facility (Doc. 53-6, ¶ 18; *see* Doc. 53-4, p. 16). On April 28, 2015, while at Carle Hospital, Plaintiff underwent a flexible bronchoscopy (a procedure to view a patient's lungs), a right muscle sparing thoracotomy (a procedure to gain access to the lung), an empyemectomy and decortication, and drainage of the right lower lobe pulmonary abscess (a surgical procedure to drain the infected fluid from the lung and remove the pleural peel) (Doc. 53-6, ¶ 22; *see* Doc. 53-3, p. 71).

On May 4, 2015, just prior to being discharged from the hospital, a PICC line was inserted into Plaintiff's upper arm for the administration of IV antibiotics (Doc. 53-6, ¶ 23; *see* Doc. 53-2, p. 87). Plaintiff was to continue receiving an IV antibiotic until May 25, 2015 (*see* Doc. 53-2, p. 88). Accordingly, upon his return to Robinson CC on May 4, 2015, Plaintiff stayed in the infirmary so he could be continuously monitored and receive his IV antibiotic every eight hours

(Doc. 53-6, ¶ 25; *see* Doc. 53-1, p. 50). Defendant Dr. Adams also prescribed 50 mg of Ultram for Plaintiff upon his return to Robinson CC to be taken four times per day for one week for pain management (Doc. 53-6, ¶ 25; *see* Doc. 53-2, p. 50).

While in the infirmary from May 4 to May 26, 2015, Plaintiff was regularly monitored by medical personnel who flushed his PICC line and infused antibiotics (Doc. 53-6, ¶¶ 26-47; *see* Doc. 53-1, pp. 56-85 and Doc. 53-2, pp. 1-7). During this time, Plaintiff intermittently complained of post-operative pain and labored breathing (*see* Doc. 53-1, pp. 56, 59, 66, 73, 79, 89). In particular, Defendant Adams saw Plaintiff on May 5, 2015 and noted Plaintiff complained of persisting pain in his chest for which Defendant ordered Ibuprofen to be taken four times per day for two weeks (Doc. 53-6, ¶ 29; *see* Doc. 53-1, p. 55). The Ibuprofen was an additional pain management medication, as Plaintiff was already taking Ultram (Doc. 53-6, ¶ 29).

Plaintiff's IV antibiotic was discontinued on May 26, 2015 (Doc. 53-6, ¶ 46; *see* Doc. 53-2, p. 6). Defendant Adams also examined Plaintiff on this date and noted Plaintiff complained of sharp pain in his chest with movement or pulling (*Id.*). Defendant Adams did not provide any further treatment for Plaintiff's complaints of pain as he was already taking Tylenol and Ibuprofen (Doc. 53-6, ¶ 46). Defendant Adams did not see Plaintiff for any further post-surgery complaints or complaints related to his lung condition (*Id.* at ¶ 49).

### LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black*

*Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

## CONCLUSIONS OF LAW

### 1. Defendant Dr. Adams

Plaintiff's deliberate indifference claim against Defendant Dr. Adams is premised on Defendant's purported failure to adequately diagnose and treat Plaintiff's pneumonia. It is well settled that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks

omitted). With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

There is no dispute that Plaintiff's lung condition qualifies as a serious medical need. However, Defendant Adams contends he was not deliberately indifferent to Plaintiff's lung condition insofar as he acted reasonably in examining, diagnosing, and treating Plaintiff. The undisputed evidence establishes that Plaintiff saw Defendant Adams on April 21, 2015, after he had presented to the HCU on three prior occasions (April 9, April 13, and April 20, 2015) for varying complaints of lung pain, cough, congestion, and chills. On April 21, 2015, Plaintiff described his condition as a throbbing, sharp, grabbing pain with a productive cough and associated "nasty" sputum of a brown/green color. Upon examination, Defendant Adams found Plaintiff had a slight fever and general malaise, but his blood pressure, heart rate and respirations were normal for his age group and past history. Based on these findings, as well as Plaintiff's subjective complaints and a review of Plaintiff's previous medical records, Defendant Adams assessed Plaintiff's condition as bronchitis with a differential diagnosis of pneumonia and prescribed Levaquin, a broad-spectrum antibiotic appropriate to treat bronchitis and uncomplicated, outpatient pneumonia.

It is further undisputed that in making his diagnosis, Defendant Adams failed to order an x-ray of Plaintiff's chest or seek a sputum culture. Plaintiff contends that Defendant Adams' failure to order said tests amounted to deliberate indifference. In making this contention, Plaintiff relies on the testimony of Dr. Shah, another physician who contracted with Wexford and practiced at Robinson CC. In particular, Dr. Shah testified that the common symptoms of pneumonia are fever, chills, painful breathing, and spitting sputum (Deposition of Vipin K. Shah, M.D., Doc. 56-4, p. 7). Dr. Shah further testified that the best way to identify pneumonia is through an x-ray, but a sputum test may also be performed (*Id.*). Dr. Shah would recommend an x-ray for a patient

presenting with green or brown sputum, shortness of breath, hurting or fever (*Id.* at pp. 7-8).

While the Court finds it apparent that Dr. Shah may have treated Plaintiff's condition differently than Defendant Adams, a mere difference of opinion does not amount to deliberate indifference. Indeed, "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Moreover, "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Pyles*, 771 F.3d at 409 (citations omitted). In this instance, there is no evidence that Defendant Adams failed to exercise reasonable medical judgment in assessing, diagnosing, and treating Plaintiff's lung condition. Moreover, Defendant Adams' decision to forego x-ray or sputum testing on April 21, 2015 appears to be a "classic example of a matter for medical judgment," which was exercised by Defendant Adams in this case. *See Estelle*, 429 U.S. at 107 ("[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").

Plaintiff's claim that Defendant Adams failed to properly treat his pain following surgery is also insufficient to withstand summary judgment. Notably, there is no evidence in the record

establishing when Defendant denied Plaintiff pain medication and for how long Plaintiff was made to wait for relief from his pain. Further, Plaintiff has not presented any evidence to dispute the fact that Defendant Adams prescribed Ultram and Ibuprofen to manage Plaintiff's post-operation pain. Given the vagueness of Plaintiff's claim and the lack of evidence to substantiate it, the Court finds that no reasonable jury could conclude that Defendant Adams was deliberately indifferent in failing to manage Plaintiff's post-operation pain. *See Snipes*, 95 F.3d at 592 ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.").

For these reasons, Defendant Dr. Adams is entitled to judgment as a matter of law.

2. *Defendant Wexford Health Sources, Inc.*

Where a private corporation has contracted to provide essential government services, such as health care for prisoners, such a private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields*, 746 F.3d at 789; *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Accordingly, in order for Plaintiff to recover from Wexford, he must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. *Id.* at 796. Plaintiff must also show that policymakers were aware of the risk created by the custom or practice and failed to take appropriate steps to protect him. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009).

In his complaint, Plaintiff alleged that Defendant Wexford maintained an unconstitutional "cost over care" policy that drove his medical providers to engage in an ineffective course of treatment. Plaintiff's policy claim shifted in his response to Defendant Wexford's argument for summary judgment and he now asserts Defendant instituted a policy of uncoordinated care that amounted to deliberate indifference to his serious medical needs.

Defendant Wexford takes issue with Plaintiff's shifting claim, arguing that Plaintiff should not be allowed to proceed on a new legal theory in his response to Defendant's motion for summary judgment, particularly in light of the administrative remedy exhaustion requirement in these cases. In any event, Defendant asserts that Plaintiff's new policy argument fails on the merits.

The Court first considers Plaintiff's "cost over care" claim and rejects it outright. Plaintiff failed to introduce any evidence into the record demonstrating that the provision of medical care by Wexford and its staff was determined by cost. Indeed, Plaintiff failed to squarely address this issue in his response brief, choosing instead to shift to his "coordination of care" argument. While the Court is mindful of Defendant Wexford's concern regarding Plaintiff's shifting claims, it considers the substance of Plaintiff's argument and finds it to have no merit.

Plaintiff asserts that under Defendant Wexford's policies there is little, if any, coordination of care by medical personnel and argue that medical doctors have virtually no input in an inmate's care and treatment unless they are specifically referred by the nursing staff. Plaintiff also contends that Defendant has an unconstitutional policy of rotating the service of nurses and doctors resulting in fragmented care. While it is apparent that Plaintiff received medical care from various nurses and physicians prior to being transported for outside treatment, there is simply

no evidence for a reasonable jury to conclude that Plaintiff was injured as a result. Rather, it appears Plaintiff's condition was regularly monitored and, after his evaluation by Dr. Shah, had worsened to the point where emergency services were dictated. Plaintiff then promptly received outside treatment.

For these reasons, Defendant Wexford is entitled to judgment as a matter of law.

### RECOMMENDATIONS

For the foregoing reasons, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Dr. Michael Adams and Wexford Health Sources, Inc. (Doc. 52) be **GRANTED**; that this action be **DISMISSED WITH PREJUDICE**; and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: November 14, 2017**

**DONALD G. WILKERSON**
**United States Magistrate Judge**