# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE GONZALEZ, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC. and DR. MICHAEL ADAMS, <br><br> Defendants. | Case No. 3:15-cv-01025-JPG-DGW |

## MEMORANDUM & ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 60) of Magistrate Judge Donald G. Wilkerson recommending that the Court grant the defendants' motion for summary judgment (Doc. 52). The plaintiff has objected to the report (Doc. 61) and the defendants have responded (Doc. 63). For the following reasons, the Court **GRANTS** the defendants' motion for summary judgment (Doc. 52).

**I.    BACKGROUND**

Jose Gonzalez is an inmate in the custody of the Illinois Department of Corrections (IDOC). He brought this action under 42 U.S.C. § 1983 because he believes that the medical staff at Robinson Correctional Center (Robinson CC) were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, Gonzalez claims that the medical staff failed to properly diagnose and treat his pneumonia in a timely manner, which led to an emergency room visit and lung surgery.

Magistrate Judge Wilkerson has already described the record in this case to a great degree of precision. Gonzalez first checked in with the doctors at the medical unit at Robinson CC on April 9, 2015, claiming that he had a dry cough and nasal congestion. (Doc. 53-6, ¶ 5; Doc. 53-1,

1

pp. 26–27.) A nurse examined Gonzalez and found that he only had a slight of temperature of 100.4° F and normal pulse oxygenation readings. Accordingly, the nurse gave Gonzalez some Ibuprofen and an antihistamine and sent him on his way, along with instructions to rest and drink more fluids. (*Id.*; Doc 56-1, p. 10.)

Four days later, Gonzalez went back to the medical unit complaining of chills, coughing, and sputum. (Doc. 53-6, ¶ 6.) Another nurse examined Gonzalez, found a temperature of 96.7° F, and noted that Gonzalez's lung sounds were clear and the throat and nasal exams were normal. This nurse gave Gonzalez Acetaminophen and an expectorant to help relieve the reported symptoms. (*Id.*)

A week later, Gonzalez returned to the medical unit. (Doc. 53-6, ¶ 7.) This time, he said that he had pain in his right lung and that he could not sleep due to coughing fits. The nurse referred Gonzalez to a doctor. That doctor—defendant Dr. Michael Adams—saw Gonzalez the very next day. (Doc. 53-6, ¶ 8.) This time, Gonzalez described the pain as a sharp pain with a cough and "nasty" sputum. Dr. Adams then ran several tests. He found that Gonzalez's temperature was 99.6° F and that several of his other vital signs were normal. Dr. Adams then tested Gonzalez's lungs and found one area that appeared to be more dull to a percussion test than the rest of his lungs, though Gonzalez's breathing sounds were normal. Dr. Adams diagnosed Gonzalez with bronchitis and prescribed him an antibiotic to be taken daily for seven days. (*Id.*) The FDA has approved this particular antibiotic—Levaquin—to treat both bronchitis and uncomplicated pneumonia. (Doc 56-3, ¶ 9.) Dr. Adams did not think it was necessary to take an x-ray of Gonzalez's lung at this time.

Two days later, the medical unit called an emergency because Gonzalez's condition worsened. (Doc 56-3, ¶ 10.) His fever had risen to 103° F, several of his other vital signs were

above normal, he continued to cite pain in his right lung, and he was coughing up green and brown sputum. The acting nurse called Dr. Adams, who then instructed the nurse to been seen by another doctor on duty the next day—Dr. Shah. The medical staff continued to monitor Gonzalez until Dr. Shah was available. When Dr. Shah did examine Gonzalez two days later, Dr. Shah diagnosed him with probable pneumonia and sent him to the emergency room. (Doc 56-3, ¶ 13.) The doctors at the emergency room diagnosed Gonzalez with pneumonia and an empyema. Gonzalez then underwent surgery to remedy and drain the lung. (Doc 56-3, ¶ 14–18.)

Now, Gonzalez claims that (1) Dr. Adams was deliberately indifferent to his lung complications in violation of the Eighth Amendment; (2) Wexford has an unconstitutional "cost over care" policy, practice, or custom that deprives inmates of inadequate medical care at the prison; and (3) Wexford has an unconstitutional policy of juggling doctors, nurses, and patients around that results in a broken system of care for inmates. The defendants have moved for summary judgment on all of Gonzalez's claims.

## II. LEGAL STANDARDS

### A. Standard of Review

The Court may accept, reject, or modify—in whole or in part—the findings or recommendations of the magistrate judge in a report and recommendation. FED. R. CIV. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id*. "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

### B. Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). If the moving party bears the burden of persuasion on an issue at trial, it must "lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. National Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord Felix v. Wisconsin Dep't of Transp.*, 828 F.3d 560, 570 (7th Cir. 2016). Where the moving party fails to meet that strict burden, the Court cannot enter summary judgment for that party even if the opposing party fails to present relevant evidence in response. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but rather must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts". *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

In the Report, Magistrate Judge Wilkerson explained that even though Gonzalez's lung condition was a serious medical need, Dr. Adams was not deliberately indifferent to that need because he acted "reasonably in examining, diagnosing, and treating [Gonzalez]." Magistrate Judge Wilkerson also found that Gonzalez has not demonstrated that Wexford had an unconstitutional policy or custom that would allow them to be liable under Section 1983. Gonzalez has objected to both findings and as such, the Court will conduct a *de novo* review of those portions of the report.

### i. *Deliberate Indifference to a Serious Medical Need*

The Eighth Amendment's prohibition on the unnecessary and wanton infliction of pain forbids deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006). To prevail on such an Eighth Amendment claim, a prisoner must show (1) that he had an objectively serious medical need, and (2) that the official knew that the medical need was serious but disregarded it. *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016); *Johnson*, 444 F.3d at 584.

An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson*, 444 F.3d at 585 ("The standard requires that an officer have 'subjective awareness' of the serious medical need and then act with indifference to that need."). "Something more than negligence or even malpractice is required." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Burton*,

5

805 F.3d at 784. "Deliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed." *Chapman v. Keltner*, 241 F.3d 842, 845-46 (7th Cir. 2001) (citing *Estelle*, 429 U.S. at 104-05). It can also arise where a treatment decision was "blatantly inappropriate," *Pyles*, 771 F.3d at 409 (internal quotations omitted; treatment that is "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment"); *see Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006) (treatment is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment"); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996) (treatment was a "substantial departure from accepted professional judgment, practice, or standards"). The prisoner must show that the defendant's conduct was intentional or criminally reckless; neither simple nor gross negligence is sufficient to establish deliberate indifference. *Burton*, 805 F.3d at 784; *Johnson*, 444 F.3d at 585; *Salazar v. City of Chi.*, 940 F.2d 233, 238 (7th Cir. 1991).

Here, Magistrate Judge Wilkerson is correct that Dr. Adams did not act with deliberate indifference. Dr. Adams may have failed to properly diagnose Gonzalez's pneumonia, and he may have chosen not to order an x-ray of Gonzalez's lungs—but this does not amount to "a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment". *Pyles*, 771 F.3d at 409. Rather, Dr. Adams examined Gonzalez, diagnosed his symptoms as bronchitis, and prescribed him antibiotics for his condition. This type of behavior—diagnosing a prisoner and prescribing him with what appears to be a reasonable treatment option—does not even sniff "deliberate indifference" to a prisoner's serious medical needs. And as the defendants correctly point out in

their response to the Report, negligence, medical malpractice, and mistakes do not qualify as "deliberate indifference".

### ii. *Unconstitutional Policy, Practice, or Custom*

A private corporation that is under contract to provide essential government services—like defendant Wexford—can be liable under § 1983 if (1) it had an express policy calling for constitutional violations; (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law; or (3) if a person with final policymaking authority for the corporation caused the constitutional violation. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 790 (7th Cir. 2014) (applying the *Monell* standard to a private corporation under contract to provide health care for state prisoners). The corporation is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694.

Here, Gonzalez has introduced no evidence of any unconstitutional policy, practice, or custom of Wexford that would expose them to Section 1983 liability. First, as Magistrate Judge Wilkerson correctly noted, Gonzalez has not pointed to anything in the record that indicates Wexford maintained an unconstitutional "cost over care" policy that required medical workers to neglect their patients. In fact, Gonzalez abandoned this argument in his response brief to the defendants' motion for summary judgment, arguing instead that the medical providers at the unit unconstitutionally juggled him around different nurses and doctors rather than solving his medical issue. Even if the Court acknowledges this new argument over Gonzalez's first, there is absolutely no evidence in the record that supports Gonzalez's claim. There is evidence, however,

7

that the medical staff at Robinson CC listened to his complaints, ran multiple tests during multiple clinical visits, diagnosed Gonzalez with bronchitis (albeit mistakenly instead of pneumonia), and prescribed him antibiotics. As soon as Gonzalez's symptoms worsened, the unit called a medical emergency and sent him to an emergency room for treatment. There is no constitutional violation here.

## CONCLUSION

For the foregoing reasons, the Court:

- **ADOPTS** the Report in its entirety (Doc. 60);

- **GRANTS** the Motion for Summary Judgment (Doc. 52);

- **DISMISSES** this action with prejudice; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: JANUARY 3, 2018**

**s/ *J. Phil Gilbert*** 
**J. PHIL GILBERT** 
**DISTRICT JUDGE**
